

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00352-CV

---

Juan Luis Mora, Individually and as Dependant Administrator of
the Estate of Arturo Mora Reyes, Deceased,
Perla Rodriguez, as Next of Friend of P.A.M., A.W.M., and P.V.M., all Minor Children,
Maritza Hernandez, as Next Friend of AR.M. and AL.M, all Minor Children,
and Maria C. Mora, Appellant

v.

Atlas Aerospace, LLC, Appellee

On Appeal from County Court at Law Number Three
El Paso County, Texas
Trial Court No. 2024DCV3696

## MEMORANDUM OPINION

The underlying wrongful death lawsuit arises from a fatal collision between two semi-trucks, which resulted in the death of two people, Arturo Mora Reyes (Arturo) and Patricio Maturino (Maturino). Appellants (the Mora Family) are Arturo's relatives who are wrongful death

beneficiaries, as well as the representative of Arturo's estate who asserts survival claims. The Mora Family sued several defendants, including Appellee, Atlas Aerospace, LLC (Atlas).[1] Atlas—a shipper who had contracted with a defendant freight-forwarder for transportation of its goods—filed an amended motion for traditional and no-evidence summary judgment. The trial court granted the amended motion and dismissed all causes of action against Atlas with prejudice. After the trial court severed the Mora Family's causes of action against Atlas from any remaining claims, the Mora Family filed a motion for new trial, which was overruled by operation of law. This appeal by the Mora Family ensued. In several issues on appeal, the Mora Family asserts (1) the trial court erred in granting Atlas's amended motion, (2) the trial court abused its discretion by excluding two exhibits they submitted as summary judgment evidence, and (3) good cause existed for the trial court to grant their motion for new trial. We affirm.

## I. FACTUAL BACKGROUND

On June 13, 2018, in Pratt County, Kansas, Evaristo Mora (Evaristo) was driving an 18-wheeler owned by his employer, Daniel Roa Dorado d/b/a Dorado's Trucking (Dorado Trucking), eastbound on U.S. Route 54 (US 54). Arturo was a passenger in Dorado Trucking's vehicle. Another 18-wheeler owned by Sonric's Trucking, which was driven by Maturino, was traveling westbound on Interstate US 54. Both vehicles collided head on resulting in the deaths of Arturo and Maturino.

---

[1] The Mora Family sued a group of defendants alleging they were collectively liable for the accident under various theories: Atlas, American Industries d/b/a Rio Bravo; Ruben Paredes Individually and Essen Global Logistics Corporation; Gaspar Vargas Diaz d/b/a Transportes Vargas Diaz; and/or Ruben Gonzalez Individually; and F.H. Kaysing Co, LLC (collectively, the Defendants). They also sued individual defendants: the driver, Maturino, Sonric's Trucking, and Dorado Trucking.

### A. The Mora family's allegations[2]

The Mora Family's allegations against the Defendants, including Atlas, were not specific as to any one of the Defendants. Instead, they raised allegations against the Defendants collectively. The Mora Family contended Evaristo was in the course and scope of his employment with Dorado Trucking and/or was a statutory employee and/or agent of the Defendants, and all the Defendants were liable for the alleged negligence of Evaristo and Dorado Trucking under the doctrines of respondeat superior, vicarious liability, joint enterprise, and federal regulations governing motor carriers.

The Mora Family alleged the Defendants selected Dorado Trucking to drive motor carriers and thus they were responsible for qualifying the company/drivers and ensuring compliance with United States laws and regulations. They also contended Defendants were negligent because (1) they should have been aware that Dorado Trucking was not in compliance with United States laws and regulations, and (2) negligently training, selecting, and retaining Dorado Trucking.

The Mora Family also contended Dorado Trucking and Evaristo were acting as agents of Defendants and were acting within the course and scope of their agency. They alleged Defendants had the right to control or approved control, and directed the activities of their agents and were liable for the acts or omissions of their employees and agents and any person over whom Defendants retained control. They also alleged Defendants had control over the manner, methods, and procedures that employees, agents and representatives used in carrying out assigned duties, such as transporting Atlas's products from Mexico to El Paso, Texas and from El Paso, Texas to Wichita, Kansas. Alternatively, the Mora Family alleged the Defendants were vicariously liable for the acts of Dorado Trucking, and by extension Evaristo, because at the time of the collision, all

---

[2] The following allegations are taken from the Mora Family's Seventh Amended Petition, which was the live petition when the summary judgment was granted.

Defendants were engaged in a joint enterprise. The Mora Family alleged their damages were proximately caused by one or more of the alternative acts or omissions on the part of Defendants.

### B. Atlas's amended motion for summary judgment[3] & the Mora family's response

Atlas's amended motion for traditional summary judgment on all of the Mora Family's negligence claims was based on its contention that it owed the Mora Family no duty. Atlas contended it had no legal duty to plaintiffs. It urged that the Mora Family wrongly attempted "to use agency [principles] as a vehicle to tie Atlas to the various alleged negligent acts of Evaristo and Dorado Trucking in order to allege Atlas had a legal duty to [the Mora Family]." Atlas argued that agency, vicarious liability, and respondeat superior did not apply to Atlas because Evaristo and Dorado Trucking were not employees or agents of Atlas, nor did Atlas exercise control over either of them, or have a role in their employment with regard to the load in question. Although the Mora Family did not expressly allege that Atlas negligently hired Essen, Atlas nonetheless moved for a traditional summary judgment on the ground that it did not negligently hire Essen.[4] As the basis for its no-evidence summary judgment, Atlas asserted there was no evidence of a joint enterprise.

The Mora Family filed a response in which it asserted that (1) because the trial court had already denied Atlas's first motion for summary judgment and there were no new facts, the trial court should deny the amended motion for summary judgment; (2) a genuine issue of fact existed "proving" Atlas's negligent hiring of Essen proximately caused the accident; (3) a genuine issue

---

[3] On April 14, 2021, Atlas filed a Traditional and No-Evidence Summary Judgment on all causes of action asserted by the Mora Family. The trial court granted the motion, but on August 26, 2021, signed an order vacating its summary judgment order. On October 25, 2023, Atlas filed the amended motion for summary judgment, which is the subject of this appeal.

[4] In their Seventh Amended Petition, the Mora Family did not specifically allege Atlas negligently hired Essen. Instead, their allegations centered on Atlas's liability for the acts or omissions of Dorado Trucking. Nevertheless, in its Amended Motion for Summary Judgment, Atlas asserted it did not negligently hire Essen and the Mora Family responded to the argument. Both parties address the issue on appeal.

of fact existed "proving" Atlas controlled Essen and Dorado Trucking thus proximately causing the accident; and (4) a genuine issue of fact existed "proving" Atlas maintains a joint venture with Essen and the motor carriers with which Essen contracts.

After conducting a hearing on the motion for summary judgment, the trial court signed an order granting Atlas's amended motion, without stating its grounds. The trial court severed the Mora Family's causes of action against Atlas from any remaining claims, and the Mora Family filed a motion for new trial, which was overruled by operation of law. This appeal by the Mora Family ensued.

## II. STANDARD OF REVIEW

In their first issue, the Mora Family raises three challenges to the trial court's granting of Atlas's amended motion for summary judgment: (1) the court should have denied the amended motion because it had already determined a fact issue existed as to Atlas's negligence when the court granted and then vacated its order granting Atlas's first motion for summary judgment; (2) the trial court abused its discretion by sustaining Atlas's objections to the Mora Family's summary judgment evidence; and (3) the trial court erred in granting Atlas's amended motion for summary judgment.

We review de novo a trial court's summary judgment ruling on both traditional and no-evidence motions. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a party moves for both a traditional and a no-evidence summary judgment, we ordinarily first review the trial court's summary judgment under the no-evidence standard of Texas Rule of Civil Procedure 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). However, "we may address the traditional grounds for summary judgment first when they are dispositive." *Tippett v. Safeco Ins. Co. of Indiana*, No. 02-19-00152-CV, 2020 WL 827143, at *3 (Tex. App.—

5

Fort Worth Feb. 20, 2020, no pet.) (mem. op.); *see also Schuetz v. Source One Mortg. Servs. Corp.*, No. 03-15-00522-CV, 2016 WL 4628048, at *2 (Tex. App.—Austin Sept. 1, 2016, no pet.) (mem. op.). ("in the interest of efficiency, we may review a summary judgment under the traditional standard of Rule 166a(c) first, if the application of that standard would be dispositive").

A defendant that conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to summary judgment as to that cause of action. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). To prevail on a traditional motion for summary judgment, the movant must show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(a)(1). "If the movant meets that burden, the burden shifts to the nonmovant to present evidence raising a fact issue, but the burden does not shift if the movant does not satisfy its initial burden." *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 583 (Tex. 2023).

In deciding whether a disputed material fact issue precludes summary judgment, we examine the evidence in the light most favorable to the nonmovant, indulging reasonable inferences and resolving any doubts against the moving party. *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024). The fact issue must be both genuine and material—a mere scintilla or conclusory assertion is insufficient to raise the kind of disputed issue that defeats a properly supported motion. *See Ridgway*, 135 S.W.3d at 600 (defining "genuine issue of material fact" in the context of a no-evidence summary judgment as existing "if more than a scintilla of evidence establishing the existence of the challenged element is produced"). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). We credit evidence favorable to the nonmovant if

reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

We review evidentiary rulings in a summary judgment proceeding under an abuse of discretion standard. *State v. Three Thousand, Seven Hundred Seventy-Four Dollars & Twenty-Eight Cents U.S. Currency*, 713 S.W.3d 381, 387 (Tex. 2025); *Gilbert v. Kalman*, 650 S.W.3d 135, 143 (Tex. App.—El Paso 2021, no pet.). "A trial court abuses its discretion by acting without reference to guiding rules or principles." *Stillwell v. Stevenson*, 668 S.W.3d 844, 849 (Tex. App.—El Paso 2023, pet. denied).

### III. ATLAS'S FIRST MOTION FOR SUMMARY JUDGMENT

The Mora Family contends that because the trial court vacated its order granting Atlas's first motion for summary judgment based on its determination that a fact issue existed as to Atlas's negligence, the court should have denied the amended motion for summary judgment. They assert this is similar to the doctrine of issue preclusion, which prevents relitigating issues previously resolved. However, they do not explain how the doctrine applies here and we conclude it does not.

On April 14, 2021, Atlas filed a Traditional and No-Evidence Summary Judgment on all causes of action asserted by the Mora Family. After the trial court granted the motion for a traditional summary judgment, the Mora Family filed a motion for reconsideration and/or new trial. On August 26, 2021, the trial court signed an order vacating its summary judgment order. Contrary to the Mora Family's contention on appeal that the trial court vacated its summary judgment order because it determined there was a fact issue, the order itself makes no such finding. The order states, in its entirety, as follows:

> On the 25th of August, 2021, the parties appeared through their Counsel of record for hearing before the Court. After considering the arguments of Counsel

7

and reviewing the record, the Court finds the following opinion reasonable and necessary.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the Court's prior Order granting Defendant Atlas Aerospace LLC's Traditional Motion for Summary Judgment is hereby VACATED.

IT IS ACCORDINGLY ORDERED, ADJUDGED and DECREED that Plaintiffs' claims against Defendant Atlas Aerospace LLC are hereby REINSTATED.

Even if the trial court based its order vacating the summary judgment on the existence of a fact issue, the Mora Family's reliance on the doctrine of issue preclusion is misplaced. "Collateral estoppel, or issue preclusion, prevents relitigation of certain issues already resolved in a prior suit." *Croysdill v. Old Republic Ins. Co.*, 668 S.W.3d 782, 793 (Tex. App.—El Paso 2023, pet. denied).[5] Here, the doctrine does not apply for two reasons. First, Atlas moved for both a traditional and no-evidence summary judgment. As the basis for a traditional summary judgment, Atlas asserted it had sufficient evidence to negate at least one essential element of the Mora Family's cause of action for negligence and to negate the four elements of the cause of action for joint enterprise liability. The trial court granted the motion for traditional summary judgment, but without stating its grounds. Therefore, we cannot say which "issues [were] resolved."

Second, there is no final resolution of the issues before the trial court. "While the judgment requirement for collateral estoppel does not always require a final, appealable judgment, the test for finality is 'whether the conclusion in question is procedurally definite.'" *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985) (quoting Restatement (Second) of Judgments § 13, comment (g) (1982)). "The factors to be considered in answering this question include whether 'the parties were fully heard, [whether] the court supported its decision with a

---

[5] The elements of collateral estoppel are: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Croysdill v. Old Republic Ins. Co.*, 668 S.W.3d 782, 793 (Tex. App.—El Paso 2023, pet. denied).

reasoned opinion [and whether] the decision was subject to appeal or was in fact reviewed on appeal.'" *Id*. Here, the "conclusion in question is [not] procedurally definite" because it was not a final, appealable judgment.

For these reasons, we overrule the Mora Family's first issue on this basis.

## IV. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

During the hearing on the amended motion for summary judgment, the trial court first heard arguments on Atlas's objections to certain exhibits submitted by the Mora Family as summary judgment evidence. The two exhibits at issue are (1) Essen's Contract Carrier Agreement with Dorado Trucking (Carrier Agreement) and (2) a Kansas Motor Vehicle Accident Report (KDOT Form 850) that described the accident. After hearing arguments, the trial court sustained Atlas's objections to these exhibits. On appeal, the Mora Family contends the trial court abused its discretion by doing so.

### A. Carrier agreement

The entirety of the Mora Family's argument that the Carrier Agreement should have been admitted is contained in a single sentence: "Given Dorado's [sic] Trucking's authorized representative knew of the agreement and discussed the agreement, Dorado's Trucking authenticated the contents of the agreement. Tex. R. Evid. 901(b)(1)."

An appellant's brief must contain clear and concise arguments including appropriate citations to legal authority and to the record. Tex. R. App. P. 38.1(i); *Int. of A.N.G.*, 631 S.W.3d 471, 476 (Tex. App.—El Paso 2021, no pet.). "Mere uttering of brief, conclusory statements unsupported by citation to legal authorities does not satisfy briefing requirements." *A.N.G.*, 631 S.W.3d at 476. Although we are cognizant that a party should not lose its right to appeal based on an unduly technical application of the procedural rules, "we are still not required to perform

research nor develop an argument for an appellant who inadequately prepares an appellate brief." *Id.* at 477.

Beyond the Mora Family's bare assertions and a single citation to a rule of evidence, they make no clear and concise argument in support of their contention that the Carrier Agreement was admissible. *See* Tex. R. App. P. 38.1(i). Therefore, they have waived this complaint, and we overrule the Mora Family's first issue on this basis.

### B. KDOT Form 850

Kansas Highway Patrol Trooper David Monckton prepared the 11-page KDOT Form 850 accident investigation report. On appeal, the Mora Family identify Monckton as a non-retained expert. Relying on Texas Rule of Evidence 901(b)(1), they contend that because he prepared the report through his investigation of the crash, he authenticated the document and the findings contained in the report. Further, relying on *Malouf v. State ex rels. Ellis*, 656 S.W.3d 402, 410 (Tex. App.—El Paso 2022), *rev'd*, 694 S.W.3d 712 (Tex. 2024), they contend, without further elaboration, that Monckton, an expert in this case, is allowed to rely on hearsay statements in preparing his conclusions and report.[6] We conclude this complaint also is inadequately briefed.

Under Rule 901, to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). One form of evidence that satisfies this requirement is the testimony of a witness with knowledge that an item is what it is claimed to be. *Id.* at 901(b)(1). We will assume without deciding that Monckton was able to authenticate the KDOT Form 850. However, authentication is merely a condition precedent to admissibility. *See*

---

[6] The *Malouf* court held that "[t]he Texas Rules of Evidence authorize expert witnesses to testify about facts or data beyond their personal knowledge if they have 'been made aware of' or 'reviewed' them." *Id.* (citing to Tex. R. Evid. 703).

*Herzing v. Metro. Life Ins. Co.*, 907 S.W.2d 574, 580 (Tex. App.—Corpus Christi-Edinburg 1995, writ denied).

The Mora Family does not specify the "hearsay statements" or "conclusions" on which Monkton should have been allowed to rely *See* Tex. R. Evid. 803. Nor do they elaborate on whether "the facts or data" contained in the KDOT Form 850 "are of a type upon which experts in the field reasonably rely in forming opinions on the subject[.]" *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 440 (Tex. 2007). As explained above, we are not required to perform research or develop an argument for an appellant who inadequately prepares an appellate brief. *A.N.G.*, 631 S.W.3d at 477. Therefore, they have waived this complaint and we overrule the Mora Family's first issue on this basis.

## V. ATLAS'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT

Atlas moved for a traditional summary judgment on the Mora Family's negligence claims on the ground that it did not owe them a legal duty and it did not negligently hire Essen. It moved for a no-evidence summary judgment on ground that there was no evidence of any of the four elements of joint enterprise.[7]

A common element running through all of the Mora Family's theories and claims is control. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002) (noting key elements of respondeat superior liability outside the employment context are a benefit to the defendant, and the defendant's right of control); *Crooks v. M1 Real Est. Partners, Ltd.*, 238 S.W.3d 474, 491

---

[7] In the section of its amended motion for summary judgment discussing its entitlement to a no-evidence summary judgment, Atlas contended the Mora Family could produce no evidence to support any of its causes of action against it. However, the only theory of recovery Atlas specifically addressed was joint enterprise. A no-evidence motion for summary judgment "must" state specifically the elements of the claim challenged, "and the comment to the rule further provides that the 'motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case.'" *Garcia v. State Farm Lloyds*, 287 S.W.3d 809, 819 (Tex. App.—Corpus Christi-Edinburg 2009, pet. denied) (citing Tex. R. Civ. P. 166a cmt.).

(Tex. App.—Dallas 2007, pet. denied) (same); *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) ("The most frequently proffered justification for imposing [respondeat superior] liability is that the principal or employer has the right to control the means and methods of the agent or employee's work."); *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (elements of joint enterprise include "an equal right to a voice in the direction of the enterprise, which gives an equal right of control"); *Ratcliff v. TranStewart Trucking Inc.*, 684 F. Supp. 3d 845, 867 (S.D. Ind. 2023) ("For vicarious liability under the [Federal Motor Carrier Safety Regulations] to attach to a motor carrier, that motor carrier must have been in control or possession of the motor vehicle at issue."). Because all of the Mora Family's theories and claims required some evidence that Atlas controlled Dorado Trucking, or its driver, we examine whether Atlas conclusively established an absence of such control.

## A. Undisputed facts

Several of the underlying facts are not in dispute. Atlas manufactures aircraft parts and ships those parts to its customers.[8] Atlas hired Essen to transport its products from Atlas's facility in Chihuahua, Mexico to its Wichita, Kansas facility. Essen then hired Transportes Vargas Diaz (Transportes) to transport Atlas's products from Chihuahua to Essen's facility in El Paso, Texas. Essen hired another motor carrier, Black Sheep, to transport Atlas's products from El Paso to Wichita. Because the Black Sheep driver was over his allowed hours to drive, he stopped in Santa Rosa, New Mexico. Essen hired Dorado Trucking to pick up the Essen trailer loaded with Atlas's products in New Mexico and take the load to Wichita. Evaristo, who had been a driver for Dorado

---

[8] Atlas ships the raw material from its facility in Wichita, Kansas to its facility in Chihuahua, Mexico, where the materials are assembled into parts and then shipped back to the United States.

Trucking for about five or six years, was driving the 18-wheeler owned by Dorado Trucking when it collided with the 18-wheeler driven by Maturino.

**B. Atlas's motion**

The Mora Family alleged its injuries were proximately caused by the negligence of all the Defendants, including Atlas. In its amended motion for summary judgment, Atlas relied on the following summary judgment evidence for its argument that because it had no control over Evaristo or Dorado Trucking, it did not owe the Mora Family a duty; thereby negating one element of their negligence claims.

Transportes's representative, Gaspar Vargas Diaz, testified Transportes did not work for Atlas and the company was hired by someone else (Essen). Diaz stated Essen arranged for Transportes to complete the Atlas shipment and Transportes invoiced Essen for the job. Diaz said Transportes does not contract directly with Atlas in any capacity; instead, Essen requested a service from Transportes and Transportes provided the service to Essen.

Essen's representative, Enrique Paredes, said he is the sole decision-maker about which company to use to transport goods; Atlas does not direct him on which carrier to use to transport its cargo; Atlas does not participate in any decision as to what carrier to use to transport its cargo; and Atlas does not provide a list of requirements that a carrier must satisfy before it is permitted to transport its cargo. Paredes said Atlas's only role was to pay Essen to arrange for the transportation of its goods. Paredes stated that Essen's contract with Dorado Trucking required it to provide "good equipment." Paredes said Dorado Trucking loaned Essen its trailer so that he could load it with Atlas's parts in Chihuahua. Paredes testified that if a truck is stopped at the U.S.-Mexican border for inspection he is informed by Transportes, but he did not know whether this

truck transporting Atlas's goods was inspected. He said he was not able to track, via GPS, the truck or trailer transporting Atlas's goods.

Dorado Trucking's representative, Adrian Dorado, testified Essen hired Dorado Trucking to move loads from El Paso to Wichita.[9] When asked if Dorado Trucking had a contact at Atlas with whom he could discuss logistics, he answered "[t]hat wasn't part of my operation[, and] Essen" "handled that." Dorado said Atlas was aware Dorado Trucking was the transport company for this job. When asked if anyone at Atlas "ever look[ed] at your trucks or make sure that they were safe for the roadways[,]" he responded "[t]hat wouldn't be part of their responsibility." Dorado said it was "the driver's responsibility to do a pre-trip and post-trip inspection." Under the contract between Dorado Trucking and Essen, Essen would supply the trailers. He testified that Transportes was not responsible for ensuring that Dorado Trucking's trucks were fully in compliance with Federal Motor or Carrier safety laws because that was Dorado Trucking's responsibility.

Dorado stated that the Black Sheep driver operated a tractor hauling a trailer owned by Dorado Trucking because it had allowed Essen to use the trailer for the job. He said both Dorado Trucking and Essen were able to monitor the trailer's location with GPS. Dorado said he did not know why the Black Sheep driver was not allowed to wait 10 hours to resume driving. He said he never had any communication with Atlas, and his communication was always with Essen. Essen decided whether to use Dorado Trucking, Black Sheep, or some other company.

---

[9] Dorado said the company's Mexican carriers haul trailers from the border to Essen, his drivers pick up the trailer at Essen's location, and deliver it to Wichita, Kansas, where they unload, reload, drive back to El Paso, and drop the trailer off with Essen.

Atlas's import/export compliance manager, Robin Shaw, testified that Essen does not inform Atlas about the identity of the carrier or the driver that will undertake the transportation of goods for Atlas.

We conclude the above evidence establishes that Atlas merely hired Essen to ship its goods and it exercised no control over the trucking company Essen hired. *In re Home Depot U.S.A., Inc.*, 735 S.W.3d 719, 725 (Tex. 2026) ("a shipper of . . . cargo should ordinarily be entitled to rely on the carrier to conduct business lawfully and to utilize proper equipment"). Moreover, the evidence established that Atlas had no relationship with Evaristo, Dorado Trucking, or Dorado's driver; therefore, Atlas exerted no control over any of those parties. Because Atlas satisfied its initial burden of negating the duty element essential to the Mora Family's negligence claims, the burden shifted to them to identify a fact issue or create a fact issue by producing controverting evidence that raises a fact issue on the negated element. *See Stanfield v. Neubaum*, 494 S.W.3d 90, 102 (Tex. 2016).

## C. The Mora family's response

In their response to Atlas's amended motion for summary judgment, the Mora Family asserted there was a genuine issue of fact as to whether Atlas exercised control over the June 13, 2018, shipment. They alleged Atlas controlled the travel routes and pressured motor carriers to quickly deliver their loads.

With respect to how Atlas's products were transported from the facility in Mexico to the facility in El Paso, the Mora Family alleged Transportes "cannot transport Atlas's materials to El Paso through the FAST lane specifically because Atlas prevents [Transportes] from doing so." But, Diaz did not testify that Atlas took active steps to "prevent" his drivers from using a particular lane of traffic when crossing from Mexico into the U.S. Diaz testified that when a shipment is

transported from Mexico to the U.S., his drivers use the security system provided by the U.S. known as the C-TPAT program.[10] Diaz said the driver did not use the C-TPAT program's FAST lanes for this transport because Atlas had not opted into the C-TPAT program.

We conclude the Mora Family's argument conflates affirmative acts and passive omissions. Preventing something requires active conduct—taking steps to stop or obstruct an outcome—while not opting in simply reflects a choice to not participate, which lacks the affirmative quality necessary to constitute prevention absent a legal duty to act. *See Guy v. Absopure Water Co., LLC*, 703 F. Supp. 3d 813, 819 (E.D. Mich. 2023) (although plaintiffs asserted *Absopure* failed to post the required Department of Labor poster notifying them of their rights under the FLSA, "such a failure does not amount to 'active steps' preventing Plaintiffs from timely filing their notice of intent to join this suit"); *State v. Fede*, 237 N.J. 138, 149 (2019) ("It would be both counterintuitive and contrary to the plain meaning of the term 'affirmative,' which requires effort, to find that defendant affirmatively interfered with the police by failing to remove an already-fastened chain lock from his door."); *Wright v. State*, 494 S.W.3d 352, 364 n.6 (Tex. App. 2015—Eastland, pet. ref'd) ("Clearly, the two are antithetical concepts: while an 'act' encompasses an affirmative action on the part of a person, an omission encompasses a forbearance of action.").

---

[10] The parties do not define the term "FAST lane," but we assume they refer to traffic lanes at the U.S./Mexican border that allow for secure and expedited travel under the C-TPAT (Customs-Trade Partnership Against Terrorism) program. C-TPAT "is a cooperative partnership between supply chain companies and DHS with the goal of enhancing security in exchange for facilitated processing of shipments." *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 WL 787955, at *3 (N.D. Ill. Mar. 15, 2022) (mem. op.). "C-TPAT is a voluntary government-private sector program that seeks to strengthen the security of the international supply chain; in exchange for meeting certain minimum-security requirements, members may enjoy certain benefits, including for example, easier entry at U.S. borders." *Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 891 (N.D. Ill. 2021). "To support increased trade and expedite secure processing of cross-border trade and travel between Mexico and the United States, six FAST (Free and Secure Trade)/Express lanes are operating at the U.S.-Mexico border[.]" Dunniela Kaufman, Does Security Trump Trade?, 13 L. & Bus. Rev. Am. 619, 628 (2007).

We conclude that, under the circumstances presented here, voluntary program participation—or the decision not to participate—does not establish control, create duties, or impose liability. Our legal analysis focuses on actual operational control or affirmative conduct, not on whether an entity opted into or out of a voluntary program. Here, there is no evidence that Atlas had a legal duty to opt into C-TPAT program. As stated above, "C-TPAT is a voluntary government-private sector program[.]" *Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 891 (N.D. Ill. 2021) ; *see also Rogers*, 2022 WL 787955, at *3 (determining court "need not wade into the parties' dispute over whether C-TPAT can serve as a basis for preemption seeing as how it is a voluntary program"). Although the ability to use the FAST lane may have resulted in the company hired by Essen to transport Atlas's products arriving at its final destination sooner or alleviating the need to change drivers from Black Sheep to Dorado Trucing, Atlas undertook no affirmative act to control Essen's operational decisions regarding which company to hire, which driver to use, or how the cargo would be transported. *See Home Depot*, 735 S.W.3d at 723 (Werner was an independent contractor conducting operations with its own employees and its own equipment on public roadways; Home Depot undertook no affirmative acts that created or increased the danger, and nothing about the cargo is alleged to have done so either; instead, accident was caused by the truck driver's alleged failure to heed a traffic signal.).

The Mora Family also alleged that when Atlas's load was in Essen's possession in El Paso, Atlas expected the load to be delivered to Wichita within 12 hours, and if one motor carrier could not deliver the load within 12 hours, Atlas expected a second motor carrier to take up the load and deliver Atlas's products within the 12-hour period. However, the testimony of Dorado Trucking's representative was as follows:

Q. How much time . . . did you have to get goods from Wichita to El Paso?

17

.        .        .

A. There was no specific time limit. Safety was a number one priority.

Q. You could take a week or two if you need it?

A. No, no, no. I mean, as long as it was within legal limits. It's a 12-hour drive.

.        .        .

Q. The expectation is that it would get there what? In about 12 hours?

A. Yeah. Give or take, depending on weather and traffic.

Q. All right. And on this particular load, . . . why did you have to switch out drivers in Santa Rosa, New Mexico?

A. Due to the hours of service. To keep him from going over his hours.

.        .        .

Q. So you don't know who told Essen they needed those goods not to sit in Santa Rosa for 10 hours but to keep going north, correct?

.        .        .

A. No, no. Nobody said that, sir.

Q. Well, somebody had to decide to pick the goods up. Otherwise, Black Sheep could have just waited, correct?

.        .        .

A. You are saying that somebody told them not to sit there 10 hours?

Q. Right. In other words, someone at Atlas or Essen wants those goods in Wichita. They are not paying for them to sit on the side of the road. They want the goods in Wichita, correct?

.        .        .

A. Yes.

Although Atlas may have wanted its products delivered to its Wichita facility on a timely

basis—presumably within 12 hours—this is not an indicator of operational control. *Gonzalez v.*

18

*Ramirez*, 463 S.W.3d 499, 505–06 (Tex. 2015) (pick-up time, pick-up location, delivery location, and shipment loading are routine shipping details, which are things that any hauler would need to know; "even in the light most favorable to Jackson, no evidence shows that Gonzalez controlled, operated, or directed the operation of the trucks involved in the hauling operations at issue").

### D. Conclusion

Even in the light most favorable to the Mora Family, we conclude they presented no evidence sufficient to raise a fact issue on whether Atlas exercised any control over which trucking company was hired (Black Sheep or Dorado Trucking), which tractors were used to haul the trailers, or which drivers were selected as Atlas's products were transported from Mexico to Kansas. *See Castillo v. Gulf Coast Livestock Mkt., L.L.C.*, 392 S.W.3d 299, 305–06 (Tex. App.— San Antonio 2012, no pet.), *disapproved on other grounds by Gonzalez*, 463 S.W.3d 499 (concluding Castillos failed to bring forth more than a scintilla of evidence that Gulf Coast controlled, operated, or directed the operation of one or more vehicles that transport persons or cargo over a road or highway in this state because Gulf Coast exercised no control over the drivers and the trucks; it contacted drivers on an as-needed basis to accommodate a small percentage of its customers, its employees did not perform the loading, it did not direct the route to be taken by the drivers, nor did it exercise any other control over the trucks or the drivers as they transported the livestock to Gulf Coast's auction barn).

The Mora Family's summary judgment evidence of Atlas's alleged control is so weak as to amount to no more than a scintilla of evidence, and, at most, rises to the level of controlling "merely the end sought to be accomplished"—that their products be transported from Mexico to Kansas. *See Thompson v. Travelers Indem. Co. of Rhode Island*, 789 S.W.2d 277, 278 (Tex. 1990) ("The employer must control not merely the end sought to be accomplished, but also the means

and details of its accomplishment as well."); *see also Newspapers, Inc. v. Love*, 380 S.W.2d 582, 592 (Tex. 1964) ("The assumption of an exercise of control must be so persistent and the acquiescence therein so pronounced as to raise an inference that at the time of the act or omission giving rise to liability, the parties by implied consent and acquiescence had agreed that the principal might have the right to control the details of the work.").

Because Atlas negated the element of control central to the Mora Family's claims and theories of liability, the trial court did not err by granting its amended motion for summary judgment. We overrule the Mora Family's first issue on this basis.

## IV. MOTION FOR NEW TRIAL

The entirety of the Mora Family's second issue that the trial court erred in denying their Motion for New Trial because "[g]ood cause existed to grant [their] Motion for New Trial given the reasons stated above."

A trial court possesses broad discretion in ruling on a motion for new trial. *Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987); *Soto v. Gen. Foam & Plastics Corp.*, 458 S.W.3d 78, 81 (Tex. App.—El Paso 2014, no pet.). Where a trial court fails to enter a written, signed order on a motion for new trial, the motion is overruled by operation of law after 75 days. Tex. R. Civ. P. 329b(c). "When a motion for new trial is overruled by operation of law, as in this case, the question presented is whether the trial court abused its discretion by allowing the motion to be overruled." *Soto*, 458 S.W.3d at 81. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or it acts without reference to any guiding principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Soto*, 458 S.W.3d at 81.

Because we have concluded the trial court did not err by sustaining Atlas's objections to the Mora Family's summary judgment evidence and did not err by granting Atlas's amended

motion for summary judgment, we cannot conclude the trial court abused its discretion by allowing the Mora Family's motion for new trial to be overrule by operation of law. Therefore, we overrule their second issue.

## V. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.


GINA M. PALAFOX, Justice


July 31, 2026

Before Salas Mendoza C.J., Palafox and Soto, JJ.